**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GAITHER, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| AEROJET ROCKETDYNE HOLDINGS, INC., GAIL BAKER, MARION C. BLAKEY, CHARLES F. BOLDEN JR., KEVIN P. CHILTON, THOMAS A. CORCORAN, EILEEN P. DRAKE, DEBORAH LEE JAMES, LANCE W. LORD, | (2) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Robert Gaither ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against Aerojet Rocketdyne Holdings, Inc. ("Aerojet Rocketdyne" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to L3Harris Technologies, Inc. ("Parent") through

merger vehicle Aquila Merger Sub, Inc. ("Merger Sub") (collectively with Parent, "L3Harris") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a December 12, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, L3Harris will acquire all of the remaining outstanding shares of Aerojet Rocketdyne's common stock at a price of $58.00 per share in cash. As a result, Aerojet Rocketdyne will become an indirect wholly-owned subsidiary of L3Harris.

3. Thereafter, on January 30, 2023, Aerojet Rocketdyne filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly the Preliminary Proxy Statement makes no mention on whether a committee of disinterested board members was created to run the sales process.

5. Additionally, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning,

among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Aerojet Rocketdyne, provided by Aerojet Rocketdyne management to the Board and the Board's financial advisors, Citi Global Markets, Inc. ("Citi") and Evercore Group L.L.C. ("Evercore"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Citi and Evercore and provided to the Company and the Board.

7.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.     Plaintiff is a citizen of California and, at all times relevant hereto, has been an Aerojet Rocketdyne stockholder.

9.     Defendant Aerojet Rocketdyne is a world-recognized aerospace and defense leader that provides propulsion systems and energetics to the space, missile defense and strategic systems, and tactical systems areas, in support of domestic and international customers. Aerojet Rocketdyne is incorporated under the laws of the State of Delaware and has its principal place of business at 222 N. Pacific Coast Highway, Suite 500, El Segundo, CA.  Shares of Aerojet Rocketdyne common stock are traded on the NasdaqGS under the symbol "AJRD.".

10.     Defendant Gail Baker ("Baker") has been a Director of the Company at all relevant times.

11.     Defendant Marion C. Blakey ("Blakey") has been a Director of the Company at all relevant times.

12.     Defendant Charles F. Bolden Jr. ("Bolden") has been a Director of the Company at all relevant times.

13.     Defendant Kevin P. Chilton ("Chilton") has been a Director of the Company at all relevant times.

14.     Defendant Thomas A. Corcoran ("Corcoran") has been a Director of the Company at all relevant times.  Defendant Corcoran also serves as the Chairman of the Company Board.

15.     Defendant Eileen P. Drake ("Drake") has been a Director of the Company at all relevant times.  Defendant Drake also serves as the Company's President and Chief Executive Officer ("CEO").

16.     Defendant Deborah Lee James ("James") has been a Director of the Company at all relevant times.

17.     Defendant Lance W. Lord ("Lord") has been a Director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 10 - 17 are collectively referred to as the "Individual Defendants."

19.     Non-Party Parent is an aerospace and defense technology company, provides mission-critical solutions for government and commercial customers worldwide.

20.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Aerojet Rocketdyne maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

# SUBSTANTIVE ALLEGATIONS

*Company Background*

24. Aerojet Rocketdyne designs, develops, manufactures, and sells aerospace and defense products and systems in the United States. The Company was founded in 1915 and is headquartered in El Segundo, California.

25. The Company operates through two segments, Aerospace and Defense, and Real Estate. The Aerospace and Defense segment offers aerospace and defense products and systems for the United States government, including the Department of Defense, the National Aeronautics and Space Administration, and aerospace and defense prime contractors. This segment provides liquid and solid rocket propulsion systems, air-breathing hypersonic engines, and electric power and propulsion systems for space, defense, civil, and commercial applications; and armament systems. The Real Estate segment engages in the re-zoning, entitlement, sale, and leasing of the company's excess real estate assets. It owns approximately 11,394 acres of land adjacent to the United States Highway 50 between Rancho Cordova and Folsom, California east of Sacramento.

26. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in a November 1, 2022 press release announcing its 2022 Q3 financial results, the Company highlighted such milestones as total Net Sales for the third quarter of 2022 were $549.8 million compared with $545.3 million for the same period in 2021.

27. Speaking on these positive results, CEO Defendant Drake, commented on the Company's positive financial results as follows, "Aerojet Rocketdyne delivered a solid quarter, with strong operating profit, improved cash flow and a healthy backlog that demonstrates our role as a preferred supplier."

28. These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Aerojet Rocketdyne. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future

1   success.

2       29.     Despite this upward trajectory and continually increasing financial results, the

3   Individual Defendants have caused Aerojet Rocketdyne to enter into the Proposed Transaction

4   without providing requisite information to Aerojet Rocketdyne stockholders such as Plaintiff.

5   ***The Flawed Sales Process***

6       30.     As detailed in the Preliminary Proxy Statement, the process deployed by the

7   Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the

8   Individual Defendants and was designed with only one concern in mind – to effectuate a sale of

9   the Company by any means possible.

10      31.     First and foremost the Preliminary Proxy Statement fails to disclose whether a

11  committee of disinterested and independent directors was created to run the sales process, and if

12  so what the specific membership and powers of that committee were.  Conversely, if no such

13  committee was created, the Preliminary Proxy Statement fails to provide adequate reasoning for

14  that decision.

15      32.     Additionally, the Preliminary Proxy Statement fails to properly explain why the

16  retention of multiple financial advisors was necessary, given that both Citi and Evercore will

17  receive $35.8 million apiece for their services related to the Proposed Transaction.

18      33.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the

19  confidentiality agreement entered into between the Company and Parent, whether this agreement

20  differed from any other agreement with potentially interested third parties not specifically

21  mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific

22  terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained

23  therein, including, all specific conditions, if any, under which such provisions would fall away.

24      34.     It is not surprising, given this background to the overall sales process, that it was

25  conducted in an inappropriate and misleading manner.

26  ***The Proposed Transaction***

27      35.     On December 18, 2022, Aerojet Rocketdyne and L3Harris issued a joint press

28

COMPLAINT

release announcing the Proposed Transaction.  The press release stated, in relevant part:

**MELBOURNE, Fla. and EL SEGUNDO, Calif., Dec. 18, 2022** — L3Harris Technologies (NYSE: LHX) and Aerojet Rocketdyne Holdings, Inc. (NYSE: AJRD) together announced the signing of a definitive agreement for L3Harris to acquire Aerojet Rocketdyne for $58 per share, in an all-cash transaction valued at $4.7 billion, inclusive of net debt.

This marks L3Harris' second acquisition announcement of 2022, demonstrating its continued focus on delivering critical capabilities to warfighters while strengthening the nation's defense industrial base through increased competition.

"We've heard the DoD leadership loud and clear: they want high-quality, innovative and cost-effective solutions to meet both current and emerging threats, and they're relying upon a strong, competitive industrial base to deliver those solutions," said Christopher E. Kubasik, L3Harris CEO and Chair. "With this acquisition, we will use the combined talents of more than 50,000 employees to drive continuous process improvement, enhance business operations and elevate the performance of this crucial national asset."

A proven provider of world-class propulsion systems and energetics to the DoD, NASA and other partners and allies worldwide, Aerojet Rocketdyne has a 100-year heritage of excellence delivering some of the most significant moments in space exploration and discovery, while leading the industry with investments in rocket propulsion that support America's warfighters and enhance integrated deterrence.

The acquisition will ensure the defense industrial base and our customers will have a strengthened merchant supplier to effectively address both current and emerging threats – and promote scientific discovery and innovation – through targeted investment in advanced missile technologies, hypersonics and more.

"This agreement will accelerate innovation for national security propulsion solutions while providing a premium cash value for our shareholders and tremendous benefits for our employees, customers, partners, and the communities in which we operate," said Eileen P. Drake, CEO and President of Aerojet Rocketdyne. "Joining L3Harris is a testament to the world-class organization and team we've built and represents a natural next phase of our evolution. As part of L3Harris, we will bring our advanced technologies together with their substantial expertise and resources to accelerate our shared purpose: enabling the defense of our nation and space exploration. This is an exciting new chapter for Aerojet Rocketdyne and our over 5,200 dedicated team members, providing them with additional opportunities, and we look forward to working closely with L3Harris to complete this transaction."

Aerojet Rocketdyne currently generates approximately $2.3 billion in annual revenues. The company's employees operate primarily out of advanced manufacturing facilities in Canoga Park, California; Camden, Arkansas; West Palm

- 7 -
COMPLAINT

Beach and Orlando, Florida; Huntsville, Alabama; Orange, Virginia; Redmond, Washington; Stennis Space Center, Mississippi; Jonesborough, Tennessee; and Carlstadt, New Jersey.

The cash acquisition will be funded with existing cash and the issuance of new debt. The deal is expected to close in 2023, subject to required regulatory approvals and clearances and other customary closing conditions.

Additional information regarding this transaction can be found at the L3Harris investor page and the Aerojet Rocketdyne investor page.

***Potential Conflicts of Interest***

36.     The breakdown of the benefits of the deal indicate that Aerojet Rocketdyne insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Aerojet Rocketdyne.

37.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Name of Beneficial Owner | Number of Shares Beneficially Owned[1] | Percentage of Common Stock Outstanding |
|---|---|---|
| ***5% Shareholders*** | | |
| BlackRock, Inc.[2] | 12,897,322 | 15.9% |
| The Vanguard Group[3] | 8,071,724 | 10.0% |
| GAMCO Investors, Inc.[4] | 5,733,107 | 7.1% |
| Millennium Management LLC[5] | 4,323,063 | 5.3% |
| | | |
| ***Non-Employee Directors*** | | |
| Gail Baker | 3,294 | * |
| Marion C. Blakey | 5,413 | * |
| Charles F. Bolden Jr. | 4,352 | * |
| Kevin P. Chilton[6] | 26,820 | * |

| Name | | |
|---|---|---|
| Thomas A. Corcoran[7] | 115,980 | * |
| Deborah Lee James[8] | 5,442 | * |
| Lance W. Lord[6] | 48,560 | * |
| | | |
| *Executive Officers* | | |
| Eileen P. Drake[9] | 5,733,107 | * |
| Daniel L. Boehle | 56,778 | * |
| John D. Schumacher | 88,911 | * |
| Joseph E. Chontos[10] | 16,038 | * |
| l Non-Employee Directors and Executive Officers as a group (11 persons) | 731,905 | * |

38.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably the Preliminary Proxy statement fails to provide an accounting of these equity awards nor the cash value they will be exchanged for.

39.     In addition, certain employment agreements with certain Aerojet Rocketdyne executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.   These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Name | Cash($)[1] | Equity Award Vesting ($)[2] | Perquisites / benefits ($)[3] | Total Payments ($) |
|---|---|---|---|---|
| Eileen P. Drake | 7,170,205 | 31,314,883 | 45,307 | 38,530,395 |
| Daniel L. Boehle | 1,876,940 | 3,679,047 | 52,088 | 5,608,076 |
| John D. Schumacher | 1,560,979 | 3,996,569 | 17,226 | 5,574,774 |

40.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is

necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41.     Thus, while the Proposed Transaction is not in the best interests of Aerojet Rocketdyne, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Preliminary Proxy Statement**

42.     On January 30, 2023, the Aerojet Rocketdyne Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

43.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.   Adequate disclosure as to whether a committee of disinterested and independent directors was created to run the sales process;

b.   Adequate disclosure of the specific membership and powers of the committee of disinterested and independent directors was created to run the sales process, if one was created;

c.   Adequate disclosure of the specific reasoning as to why no committee of disinterested and independent directors was created to run the sales process, if one was not created;

d.   Adequate disclosure of why the retention of multiple financial advisors was

necessary, given that both Citi and Evercore will receive $35.8 million apiece for their services related to the Proposed Transaction;

e.   Whether the confidentiality agreements entered into by the Company with Parent differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

f.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including L3Harris and/or its affiliates, would fall away; and

g.   Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

*Omissions and/or Material Misrepresentations Concerning Aerojet Rocketdyne's Financial Projections*

44.   The Preliminary Proxy Statement fails to provide material information concerning financial projections for Aerojet Rocketdyne provided by Aerojet Rocketdyne management to the Board, Citi, and Evercore, and relied upon by Citi and Evercore in their analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

45.   The Preliminary Proxy indicates that in connection with the rendering of Citi's fairness opinion, Citi reviewed "certain financial forecasts" of the Company.  Similarly, the

Preliminary Proxy indicates that in connection with the rendering of Evercore's fairness opinion, Evercore reviewed, "certain internal projected financial data relating to Aerojet Rocketdyne prepared and furnished to Evercore by management of Aerojet Rocketdyne..."

46.     Accordingly, the Preliminary Proxy should have, but fails to provide, certain information in the projections that Aerojet Rocketdyne management provided to the Board, Citi, and Evercore. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

47.     With respect to "Aerojet Rocketdyne Projection" the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

  a.  EBITDA, including the underlying metrics of operating income, depreciation and amortization; and

  b.  Unlevered Free Cash Flow, including the underlying metrics of taxes, and adjustments related to changes in working capital and estimated pension and other postemployment benefits contributions, net of stock-based compensation and other net adjustments.

48.     With respect to the "Citi and Evercore Adjustments in Respect of the Projections" the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

  a.  Adjusted EBITDA, including the underlying metrics of EBITDA attributable to Aerojet Rocketdyne real estate segment and income/(expense) related to re-measurement of net environmental remediation asset/liability; and

  b.  Adjusted Unlevered Free Cash Flow, including the underlying metrics of Cost Accounting Standards recoveries, capital expenditures, cash taxes, changes in net working capital, other operating adjustments, cash flows associated with Aerojet Rocketdyne real estate segment, cash pension and other

postemployment benefits contribution payments, and cash flows associated with environmental liabilities.

49. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

50. This information is necessary to provide Plaintiff, in their capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Citi and Evercore's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Citi*

52. In the Preliminary Proxy Statement, Citi describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

53. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

    a. The range of estimated terminal values for Aerojet Rocketdyne calculated under each forecast;

    b. The specific inputs and assumptions used to calculate the illustrative range of perpetuity growth rates of 2.0% and 3.0% utilized;

    c. The specific inputs and assumptions used to calculate the applied discount rate range of 9.2% to 10.1%;

d.   Aerojet Rocketdyne's weighted average cost of capital;

e.   Aerojet Rocketdyne's net debt and other as of September 30, 2022 (including all underlying values of debt, tax-effected net present value of net Cost Accounting Standards ("CAS") reimbursements and cash pension contributions/other post-employment benefits ("OPEB") payments and net cash settlement of stock appreciation rights, cash, cash equivalents, reported value of real estate assets held for entitlement and leasing and reported tax effected net environmental asset/(liability));

f.   The number of Aerojet Rocketdyne common stock outstanding on a fully diluted basis;

g.   The specific inputs and assumptions utilized by Aerojet Rocketdyne management in determining the 5.4% after tax cost of debt rate utilized in the net present value of net CAS reimbursements and cash pension contributions/OPEB payments analysis; and

h.   The specific inputs and assumptions utilized by Aerojet Rocketdyne management in determining the 0.0% perpetuity growth rate utilized in the net present value of net CAS reimbursements and cash pension contributions/OPEB payments analysis;

54.   With respect to the *Present Value of Future Share Price Analysis*, the Preliminary Proxy fails to disclose the following:

a.   The illustrative one year forward adjusted firm value utilized;

b.   The specific inputs and assumptions utilized to calculate the Adjusted EBITDA multiples of 9.6x to 11.6x;

c.   Aerojet Rocketdyne's net debt and other as of September 30, 2022 (including all underlying values of debt, estimated tax effected unfunded pension/OPEB liability and net cash settlement of stock appreciation rights, estimated cash, cash equivalents, estimated value of real estate assets held for entitlement and

leasing and estimated tax effected net environmental asset/(liability));

    d.   The number of Aerojet Rocketdyne common stock outstanding on a fully diluted basis;

    e.   The specific inputs and assumptions used to calculate the discount rate of 9.9% utilized; and

    f.   Aerojet Rocketdyne's cost of equity.

55.    With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy fails to disclose the following:

    a.   The specific inputs and assumptions used to calculate the illustrative range of firm value to calendar year 2023 EBITDA multiples 8.9x to 13.5x utilized;

    b.   Aerojet Rocketdyne's net debt and other as of September 30, 2022 (including all underlying values of debt, tax effected reported unfunded pension/OPEB liability and net cash settlement of stock appreciation rights, cash, cash equivalents, reported value of real estate assets held for entitlement and leasing and reported tax effected net environmental asset/(liability)); and

    c.   The number of Aerojet Rocketdyne common stock outstanding on a fully diluted basis.

56.    With respect to the *Selected Transactions Analysis*, the Preliminary Proxy fails to disclose the following:

    a.   The value of each selected transaction;

    b.   The date when each selected transaction closed; and

    c.   The specific inputs and assumptions used to calculate the illustrative range of Firm Value / LTM EBITDA multiples of 12.6x to 17.5x utilized

    d.   The number of Aerojet Rocketdyne common stock outstanding on a fully diluted basis.

57.    With respect to the Wall Street research analysts' one-year forward price targets analysis, the Preliminary Proxy fails to disclose the following:

1          a.   The specific price targets used; and

2          b.   The identity of the Wall Street analysts used.

3      58.   These disclosures are critical for stockholders to be able to make an informed

4  decision on whether to vote their shares in favor of the Proposed Transaction.

5      59.   Without the omitted information identified above, Plaintiff is missing critical

6  information necessary to evaluate whether the proposed consideration truly maximizes his value

7  and serves his interest as a stockholder.  Moreover, without the key financial information and

8  related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's

9  determination that the Proposed Transaction is in his best interests as a public Aerojet Rocketdyne

10 stockholder.  As such, the Board has violated the Exchange Act by failing to include such

11 information in the Preliminary Proxy Statement.

12 *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*

13 *Evercore*

14     60.   In the Preliminary Proxy, Evercore describes its respective fairness opinion and the

15 various valuation analyses performed to render such opinion.  However, the descriptions fail to

16 include necessary underlying data, support for conclusions, or the existence of, or basis for,

17 underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the

18 valuations or evaluate the fairness opinions.

19     61.   With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy fails to

20 disclose the following:

21         a.   The terminal values for Aerojet Rocketdyne calculated;

22         b.   The specific inputs and assumptions used to calculate the perpetuity growth

23             rates of 2.0% and 3.0% utilized;

24         c.   The specific inputs and assumptions used to calculate the applied discount rate

25             range of 8.75% to 9.75%;

26         d.   Aerojet Rocketdyne's estimated weighted average cost of capital;

27         e.   Aerojet Rocketdyne's total debt (net of unamortized deferred financing costs);

28

f.  Aerojet Rocketdyne's cash and marketable securities (excluding restricted cash and adjusted for stock appreciation rights exercised through December 15, 2022, and for cash settlement of outstanding stock appreciation rights as of December 15, 2022, per Aerojet Rocketdyne's management);

g.  Aerojet Rocketdyne's net environmental asset position resulting from government and other reimbursements in each case as of September 30, 2022;

h.  Aerojet Rocketdyne's present value of forecast cash contributions to fund pension liabilities, net of federal government reimbursement for certain pension expenses, for fiscal years 2023 through 2031;

i.  Aerojet Rocketdyne's value of real estate held for entitlement and leasing as of September 30, 2022; and

j.  Aerojet Rocketdyne's number of fully diluted shares of Aerojet Rocketdyne common stock.

62.  With respect to the *Selected Public Company Trading Analysis*, the Preliminary Proxy fails to disclose the following:

a.  The specific inputs and assumptions used to calculate the enterprise value/Adjusted EBITDA multiples of 9.5x – 11.5x applied to Aerojet Rocketdyne's estimated fiscal year 2023 Adjusted EBITDA;

b.  Aerojet Rocketdyne's total debt (net of unamortized deferred financing costs);

c.  Aerojet Rocketdyne's cash and marketable securities (excluding restricted cash and adjusted for stock appreciation rights exercised through December 15, 2022, and for cash settlement of outstanding stock appreciation rights as of December 15, 2022, per Aerojet Rocketdyne's management);

d.  Aerojet Rocketdyne's net environmental liability position resulting from government and other reimbursements;

e.  Aerojet Rocketdyne's after-tax unfunded pension and OPEB liabilities as of December 31, 2021;

f.  Aerojet Rocketdyne's value of real estate held for entitlement and leasing as of September 30, 2022, in each case, as reported in Aerojet Rocketdyne's financial statements; and

g.  The number of fully diluted shares of Aerojet Rocketdyne Common Stock utilized.

63.  With respect to the *Selected Transactions Analysis*, the Preliminary Proxy fails to disclose the following:

a.  The value of each selected transaction;

b.  The date when each selected transaction closed; and

c.  The specific inputs and assumptions used to calculate the utilized LTM Adjusted EBITDA multiples of 13.0x to 16.0x;

d.  Aerojet Rocketdyne's total debt (net of unamortized deferred financing costs);

e.  Aerojet Rocketdyne's cash and marketable securities (excluding restricted cash and adjusted for stock appreciation rights exercised through December 15, 2022, and for cash settlement of outstanding stock appreciation rights as of December 15, 2022, per Aerojet Rocketdyne's management);

f.  Aerojet Rocketdyne's net environmental liability position resulting from government and other reimbursements;

g.  Aerojet Rocketdyne's after-tax unfunded pension and OPEB liabilities as of December 31, 2021;

h.  Aerojet Rocketdyne's value of real estate held for entitlement and leasing as of September 30, 2022, in each case, as reported in Aerojet Rocketdyne's financial statements; and

i.  The number of fully diluted shares of Aerojet Rocketdyne Common Stock utilized.

64.  With respect to the *Selected Transactions Analysis*, the Preliminary Proxy fails to disclose the following:

a.   The value of each selected transaction;

b.   The date when each selected transaction closed; and

c.   Aerojet Rocketdyne's total debt (net of unamortized deferred financing costs);

d.   Aerojet Rocketdyne's cash and marketable securities (excluding restricted cash and adjusted for stock appreciation rights exercised through December 15, 2022, and for cash settlement of outstanding stock appreciation rights as of December 15, 2022, per Aerojet Rocketdyne's management);

e.   Aerojet Rocketdyne's after-tax unfunded pension and OPEB liabilities as of December 31, 2021;

f.   Aerojet Rocketdyne's value of real estate held for entitlement and leasing as of September 30, 2022; and

g.   Aerojet Rocketdyne's number of fully diluted shares of Aerojet Rocketdyne common stock.

65.   With respect to the *Illustrative Sponsor Ability to Pay Analysis*, the Preliminary Proxy fails to disclose the following:

a.   The specific inputs and assumptions used to calculate the utilized assumed required internal rate of return in the range of 17.5% to 22.5%;

b.   The specific inputs and assumptions used to calculate the utilized range of total leverage ratios of 5.0x to 5.5x as applied to the Company's estimated LTM Adjusted EBITDA as of December 31, 2022; and

c.   The specific inputs and assumptions used to calculate the utilized exit multiple of 12.7x as applied to the Company's estimated 2027 LTM Adjusted EBITDA.

66.   With respect to the *Equity Research Analyst Price Targets* analysis, the Preliminary Proxy fails to disclose the following:

a.   The specific price targets used; and

b.   The identity of the Wall Street analysts used

67.   With respect to the *Illustrative Present Value of Future Share Price* analysis, the

- 19 -

COMPLAINT

Preliminary Proxy fails to disclose the following:

    a.  The specific inputs and assumptions used to calculate the utilized illustrative enterprise value to NTM Adjusted EBITDA multiple range of 9.7x to 11.7x;

    b.  Aerojet Rocketdyne's total debt (net of unamortized deferred financing costs) as of the end of the applicable year;

    c.  Aerojet Rocketdyne's cash and marketable securities (excluding restricted cash and adjusted for stock appreciation rights exercised through December 15, 2022, and for cash settlement of outstanding stock appreciation rights as of December 15, 2022, per Aerojet Rocketdyne's management) as of the end of the applicable year and net environmental liability position resulting from government and other reimbursements as of the end of the applicable year;

    d.  Aerojet Rocketdyne's after-tax unfunded pension and OPEB liabilities as of as of the end of the applicable year; and

    e.  Aerojet Rocketdyne's value of real estate held for entitlement and leasing as of as of the end of the applicable yea;

    f.  The number of estimated fully diluted shares of Aerojet Rocketdyne Common Stock outstanding;

    g.  The specific inputs and assumptions used to calculate the applied discount rate range of 9.0% to 10.0%; and

    h.  Aerojet Rocketdyne's cost of equity.

68. These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

69. Without the omitted information identified above, Aerojet Rocketdyne public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests. Moreover, without the key financial information and related disclosures, Aerojet Rocketdyne public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed

Transaction is in their best interests.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

70.     Plaintiff repeats all previous allegations as if set forth in full herein.

71.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

72.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

73.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

74.     The Preliminary Proxy Statement was prepared in violation of Section 14(a)

because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

75.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

76.    The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

77.    The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

78.    Plaintiff repeats all previous allegations as if set forth in full herein.

79.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

80.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual

Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

81.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Aerojet Rocketdyne' business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

82.     The Individual Defendants acted as controlling persons of Aerojet Rocketdyne within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Aerojet Rocketdyne to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Aerojet Rocketdyne and all of its employees. As alleged above, Aerojet Rocketdyne is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 13, 2023

**BRODSKY & SMITH**

By: _____

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*